UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JANET BESSEGHINI,

                            Plaintiff,        **No. 1:15-cv-00508(MAT)**
                                                                **DECISION AND ORDER**

        -vs-

CAROLYN W. COLVIN, ACTING COMMISSIONER
OF SOCIAL SECURITY,

                            Defendant.

---

## I. Introduction

Represented by counsel, Janet Besseghini ("Plaintiff") instituted this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner")[1] denying her application for Disability Insurance Benefits ("DIB"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## II. Procedural Status

On January 19, 2012, Plaintiff filed an application for DIB alleging disability beginning December 21, 2002, but she subsequently amended her onset date to January 1, 2010. (T.39, 91-92).[2] The claim was denied initially on March 12, 2012.

---

[2] Citations to "T." in parentheses refer to pages from the certified administrative transcript.

(T.56-63). Plaintiff requested a hearing on March 20, 2011, which was conducted by Administrative Law Judge Grenville W. Harrop, Jr. ("the ALJ") on April 4, 2013. (T.34-51). The ALJ issued a decision denying Plaintiff's claim on May 21, 2013. (T.18-29). The ALJ found that, notwithstanding Plaintiff's multi-level lumbar disc herniations with spinal stenosis and radiculopathy, she retained the residual functional capacity ("RFC") to perform the full range of light work, and could perform her past relevant work as a research assistant in a university library. (T.25, 28). On April 17, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T.1-6). Plaintiff then commenced this action.

Plaintiff and Defendant have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court will discuss the record evidence further below, as necessary to the resolution of the parties' contentions. For the reasons set forth herein, the Commissioner's decision is affirmed.

**III. Discussion**

    **A. RFC Unsupported by Substantial Evidence (Plaintiff's Point I)**

As noted above, the ALJ assessed Plaintiff as having the RFC to perform the full range of light work. The Regulations provide that jobs at the light exertional level involve lifting no more than 20 pounds at a time with frequent lifting or carrying of

objects weighing up to 10 pounds. See 20 C.F.R. § 404.1567(b). "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5 (S.S.A. 1983).

In arriving at his RFC finding, the ALJ assigned the "greatest weight" to the opinion of State agency medical consultant Dr. José Ruiz.[3] Dr. Ruiz completed a Physical Residual Functional Capacity Assessment on May 22, 2012. (T.257-66). Based upon his review of the record, Dr. Ruiz opined that Plaintiff could occasionally lift and carry up to 20 pounds; frequently lift 10 pounds; sit about 6 hours; stand about 6 hours; occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, and crawl; frequently balance; but could never climb ladders, ropes, or scaffolds. (T.258-59). Dr. Ruiz further stated that Plaintiff should avoid concentrated exposure to extreme cold and hazards. (T.261). With regard to Plaintiff's pain level, Dr. Ruiz noted that it appeared to be under "fairly good" control and allowed her reasonably good functionality. (T.262). The ALJ noted that Dr. Ruiz's report was the only medical opinion in the record and was "consistent with the remainder of the record as a whole."

---

[3] The medical specialty code on the form completed by Dr. Ruiz indicated that he was a surgeon. See Program Operations Manual System ("POMS") DI 24501.004, available at https://secure.ssa.gov/poms.nsf/lnx/0424501004 (last accessed Dec. 22, 2017).

Plaintiff faults the ALJ for not specifically including the limits articulated by Dr. Ruiz with regard to climbing ramps, stairs, ladders, ropes, and scaffolds; stooping; kneeling; crouching; and crawling. Generally speaking, however, the ALJ is not required to incorporate every limitation assessed by a medical source into the RFC. See Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981) ("Notwithstanding the apparent inconsistency between the reports of Dr. Delahanty and that of Dr. Elstein, we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony. . . ."); Pellam v. Astrue, 508 F. App'x 87, 89-90 (2d Cir. 2013) (unpublished opn.) ("There is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations, and substantial evidence supported the ALJ's decision not to adopt many of [the doctor]'s conclusions.").

Here, the limitations omitted by the ALJ are not, in fact, inconsistent with the RFC for a full range of light work. For instance, SSR 85-15, 1985 WL 56857 (S.S.A. 1985), observes that "[w]here a person has some limitation in climbing and balancing[4] and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work." Id. at *6. It is true that certain occupations, may be ruled out; e.g., the light occupation of construction painter, which requires climbing ladders and scaffolding," id., but that does not amount to a significant

---

[4] Dr. Ruiz opined that Plaintiff can frequently balance.

erosion of the occupational base for light work.  With regard to the restriction imposed by Dr. Ruiz to only "occasional" stooping, kneeling, crouching, and crawling, SSR 85-15 notes that "[i]f a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." SSR 85-15, 1985 WL 56857, at *7. Therefore, the ALJ's failure to specifically mention these limitations did not have any effect on the ultimate RFC determination.

Plaintiff also argues that the ALJ failed to discuss the December 30, 2004 determination by New York State and Local Employees' Retirement Systems that she was "permanently incapacitated" from the performance of the duties of "Library Clerk 2." (T.102). As the Commissioner notes, this document predates the alleged disability onset date by 6 years. Moreover, "[a] decision by any nongovernmental agency or any other governmental agency about whether [claimants] are disabled or blind is based on its rules and is not [the Commissioner's] decision about whether [claimants] are disabled or blind." 20 C.F.R. § 404.1504. This letter from the State therefore was of very limited probative value.

Plaintiff argues that there was "no basis for the ALJ to have concluded that Plaintiff could perform light work, in light of her multilevel lumbar spine disc herniations with spinal stenosis and radiculopathy." (Plaintiff's Memorandum of Law ("Pl's Mem.")

(Dkt #5-1) at 13). Plaintiff then goes on to cite all of the diagnostic testing results, such as the MRIs and CT scans, both preceding her alleged disability onset date and post-dating the expiration of her insured status. Plaintiff claims that the ALJ improperly interpreted these bare medical findings. See, e.g., Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (determining that the ALJ "as a lay person" was "simply not in a position" to interpret the medical evidence). However, what Plaintiff overlooks is that the ALJ's RFC assessment is not inconsistent with the report of State agency review consultant Dr. Ruiz, which the ALJ assigned great weight. Therefore, the Court finds no evidence that the ALJ exceeded his professional bounds by "playing doctor."

**B.   Erroneous Credibility Assessment (Plaintiff's Point II)**

Plaintiff argues that the ALJ erred in assessing the credibility of her subjective complaints. It is well settled that "[t]he ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "When the claimant alleges pain that exceeds the objectively verifiable evidence, the ALJ must consider several evaluative factors, including daily activities, medication, and causes of the pain, in order to determine the extent to which the pain affects the claimant's functional capabilities." Taylor v.

Barnhart, 83 F. App'x 347, 350 (2d Cir. 2003) (unpublished opn.) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(iv)).

Plaintiff argues that the ALJ was required to assign greater weight to her subjective complaints of pain because they were supported by "various doctors' repeated examination findings and notes." (Pl's Mem. at 16). However, Plaintiff does not cite any specific medical records in support of this argument. In fact, a review of the treatment notes reveals substantial evidence to the contrary. When she saw pain management specialist Dr. Eugene Gosy on February 5, 2010, she demonstrated no pain behaviors at the appointment, bilateral straight leg raising was negative, strength was 5/5 in the bilateral upper and lower extremity, and sensation was intact. Dr. Gosy decreased her Lyrica dosage. On May 5, 2010, Plaintiff reported to Dr. Gosy that Opana helped her for 5 to 6 hours, and she denied any symptoms other than "intractable spondylitic pain in the lumbar region with radiculopathy." (T.233). However, Dr. Gosy's clinical examination of Plaintiff was within normal limits, and he felt her lumbar radiculopathy had improved. (T.234). He recommended increasing Opana to maintain the co-analgesic measures. (Id.). Records from Dr. Mark Kim with the Buffalo Medical Group note, on May 23, 2010, and November 19, 2010, that Plaintiff's pain was "well controlled" and "stable," and that her "current medical regimen is effective." (T.195, 196).

Plaintiff also argues that the ALJ failed to explicitly consider that she had an excellent work record. A good work history

-7-

certainly "may be deemed probative of credibility." Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998); see also Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983) ("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.") (citation omitted). The Commissioner argues the ALJ "clearly was aware of and took note of Plaintiff's work history, as he noted that Plaintiff had past relevant work experience as a research assistant in a library." (Defendant's Memorandum of Law ("Def's Mem.") (Dkt #8-1) at 17). Plaintiff argues that this amounts to an impermissible post hoc rationalization.[5] See, e.g., Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962).

Ultimately, a good work history is "just one of many factors," Schaal, 134 F.3d at 502, to be considered in the credibility determination. Here the ALJ did not consider any improper factors in his decision; nor did he mischaracterize the record. The Court need not resolve whether the Commissioner's argument in an improper after-the-fact rationalization because the ALJ's failure to "specifically reference[]" Plaintiff's good work history in the decision "does not undermine the credibility assessment, given the

---

[5] Interestingly, in Wavercak v. Astrue, 420 F. App'x 91 (2d Cir. 2011) (unpublished opn.), the Second Circuit seemed to accept an argument similar to that raised by the Commissioner. There, the panel found that the ALJ "did not ignore [the claimant]'s work history" but rather "was well-aware of [the claimant]'s 17-year employment as a warehouse worker for a food distributing company, and considered this in the disability analysis when he concluded that [the claimant]'s RFC for light work prevented him from performing the medium demands of his past warehouse work." Id. at 94.

substantial evidence supporting the ALJ's determination. <u>Wavercak</u>, 420 F. App'x at 94.

**IV. Conclusion**

For the foregoing reasons, the Court finds that the Commissioner's decision is not legally erroneous and is supported by substantial evidence. Accordingly, the Commissioner's decision is affirmed. Defendant's motion for judgment on the pleadings is granted, and Plaintiff's motion for judgment on the pleadings is denied.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

HON. MICHAEL A. TELESCA
United States District Judge

Dated: December 27, 2017
Rochester, New York.